**STATE of Missouri ex rel. MISSOURI WA-TER COMPANY, a Missouri Corporation, Appellant,**

v.

**Kenneth V. BOSTIAN et al., Respondents.**

No. 22225.

Kansas City Court of Appeals.

Missouri.

Nov. 1, 1954.

J. Marcus Kirtley, Rufus Burrus, Independence, Gerald K. Presberg, St. Louis, Carter, Bull & Baer, St. Louis, of counsel, for appellant.

Byron A. Stewart, Independence, Lathrop, Righter, Blackwell & Parker, Richard S. Righter, William M. Stapleton, Kansas City, for respondents Kenneth V. Bostian and Mary Bostian.

John H. Lathrop, Sam D. Parker, Henry W. Fox, Kansas City, for respondent Atchison, T. & S. F. Ry. Co.

DEW, Judge.

The first amended petition in this case seeks the condemnation of the fee title to certain lands of the defendants for certain uses set forth. The trial court, on motion of the respondents, dismissed the petition with prejudice, at the cost of the relator, on the ground that the petition failed to state a claim on which relief can be granted, for the reason stated in the entry by the court. Thereupon the relator appealed.

For convenience the appellant will hereinafter be referred to as the plaintiff, and the respondents as the defendants.

In substance the petition in question alleged that the plaintiff Missouri Water Company is an existing Missouri corporation engaged in the business of producing, purifying, treating and distributing water to the inhabitants of the City of Independence, Missouri, and adjacent vicinity, and is a public utility, subject to the orders of and regulation by the Missouri Public Service Commission; that it possesses the power of eminent domain under Section 393.010 to Section 393.100 RSMo 1949, V.A.M.S.; that it has planned and is ready to produce, treat and distribute water to its customers *"from subterranean streams through wells;"* for which purposes and for the purpose of meeting the demands of its customers adequately and economically it is necessary for the plaintiff to take, acquire, hold, use and enjoy the ownership and immediate possession of the lands described thereinafter. The petition alleges that *"said lands will be used for the purpose of taking water from the earth beneath the lands and from underground streams* and to erect dams and levies thereon, and to lay and construct pipes and mains for the conveyance of water in, over and through said lands and in, over and through the lands situated between the source of water supply and the point of delivery of said water, and to acquire sufficient lands upon which to build works for the pumping, storage, distribution and management of water". The petition further states that all the land to be condemned lies in Jackson County, Missouri, describing them generally and by parcels, and that they are owned by the named defendants or that such defendants have an interest in them; (setting forth the names and addresses of the named defendants).

It is further alleged in the petition that plaintiff disclaims any desire to acquire, take or use any structures, crops, or other objects on the lands that may be removed, if so removed on ten days' notice from the plaintiff; that plaintiff has been unable to agree with the defendants upon a proper compensation to be paid for said lands although plaintiff has endeavored in good faith to do so. The petition declares the lands sought to be condemned are for public use; refers to a plat thereof on file in the office of the circuit clerk, and makes parties defendant all unknown persons having an interest in said land. The prayer of the petition is that the lands described be condemned "for public use" as set out; that the court appoint commissioners to determine and assess the damages and benefits, if any, which the owners of said tract of land or interests therein may have or sustain, and the just compensation they may be entitled to by the taking of such lands, and the parties entitled thereto, and upon the payment thereof by the plaintiff to the circuit clerk, the court shall decree a fee simple title to said lands to vest in the plaintiff; and plaintiff asks for an order of publication upon the defendants, and for general relief.

Thereafter defendants Bostian moved, among other motions, to dismiss plaintiff's first amended petition with prejudice on the following grounds: 1. Relator's first amended condemnation petition fails to state a claim upon which relief can be granted. 2. Said petition shows on its face that the relator does not have the right or power to maintain condemnation proceedings against these defendants. 3. Relator is not entitled to maintain this action in the name of the State of Missouri. 4. Relator, in its first amended condemnation petition, has failed to comply with the order of this Court to make its initial petition more definite by setting forth the separate ownerships of the parcels of real estate relator seeks to condemn.

Likewise, defendant Atchison, Topeka & Santa Fe Railway Company filed, among other motions, a motion to dismiss the petition with prejudice on the same grounds set forth in the like motion of the defendants Bostian, and upon the further ground that said defendant had long prior to said action, acquired lands comprising a part of those sought to be taken by the plaintiff, and is using the same in connection with the trackage lines of said railway, and thereby for public use, and that such parts of said lands are not susceptible of being subservient to the uses for which plaintiff proposes to acquire the same.

The court sustained both of the above motions and ordered that the petition be dismissed with prejudice at the cost of the plaintiff for the reason that the petition failed to state a claim upon which relief can be granted, " * * * because said Petition shows on its face that plaintiff and relator do not have the right or power to maintain condemnation proceedings against the defendants under and pursuant to Section 393.030, Mo.R.S., 1949, because said Petition shows that plaintiff is not seeking to acquire by condemnation lands upon which to build works for the pumping, storage, distribution and management of water to be taken from a stream that is not navigable, and, therefore, this Court does not have jurisdiction to grant the relief sought under the allegations of the First Amended Petition."

The plaintiff makes the single point that the court erred in ruling that the first amended petition failed to state a claim upon which relief could be granted, and in finding that under Section 393.030 RSMo 1949, V.A.M.S., "the Missouri Water Company cannot acquire by condemnation lands upon which to build works for the pumping, storage, distribution and management of water unless it obtain said water from a nonnavigable stream." Under its point of error plaintiff contends (A) That the court's construction of that section emasculates it and renders it meaningless. (B) The Legislature is not presumed to have enacted an absurd law. (C) In construing the statute a court should consider the results of the construction suggested, it being presumed that the Legislature intended a reasonable construction, permitting beneficial results. (D) Said Section grants a broad power of condemnation for the purposes therein stated, regardless of the source of water, and such construction is reasonable and permits beneficial results.

The defendants Bostian and Atchison, Topeka and Santa Fe Railway Company, joining in a brief as respondents, contend, in effect, that the court properly dismissed the petition because (1) The statutes conferring power of eminent domain must be strictly construed in favor of the landowner and, (2) Section 393.030 RSMo 1949, V.A.M.S., does not grant plaintiff power to condemn land for the purpose of obtaining water underground as its source of supply. Defendants present the further reasons as grounds for the dismissal of the petition that the relator has no power to maintain this suit in the name of the State of Missouri; that the petition failed to set forth the separate ownerships of the parcels of real estate sought to be condemned, and, as to the property of defendant Santa Fe, it asserts that Section 393.100 RSMo 1949, V.A.M.S. precludes the attempted taking, as pleaded in the petition dismissed, because of prior ownership and use by such defendant corporation.

It is evident that if the trial court properly dismissed the petition on the ground assigned by it, it will not be necessary to discuss the other grounds presented in the brief of the above defendants.

The plaintiff here relies for its authority upon Section 393.030 RSMo 1949, V.A.M.S. That statute is as follows:

"1. Any corporation, company or individual proposing to supply with water any city, town or village shall have the right *to take water from any stream that is not navigable,* and to erect a dam thereon and to lay pipes for the conveyance of water in, over or through any lands situated between the source of water supply and the point of delivery of *said water,* and to

acquire by condemnation sufficient lands upon which to build works for the pumping, storage, distribution and management of water, upon complying with the proceedings herein provided for.

"2. In case any such corporation, company or individual cannot agree with the owners of *such water* or lands sought to be obtained, or right of way, upon compensation to be paid, or in case the owner is incapable of contracting, be unknown, or be a non-resident of this state, such corporation, company or individual may apply to the circuit court of the county where said land or any part thereof lies, or the judge thereof in vacation, by petition, stating what is desired." (Italics supplied.)

■ The right of eminent domain is vested by law solely in the sovereign or in those upon whom the sovereign by legislative grant has conferred that power for a particular use. Subject to constitutional limitations, such legislative grant fixes the scope of the power conferred, to be exercised in only the manner prescribed. Since it involves the taking of private property for the use and enjoyment of others, the whole process is treated as an invasion of private rights, and a strict construction of the legislative grant of authority is exacted by the law, and doubts appearing in such grants are resolved in favor of the property owner.

It was said in Southwest Missouri Light Company v. Scheurich, 174 Mo. 235, 241, 73 S.W. 496, 497: "The right of eminent domain does not come merely from the character of the business, but arises only in legislative grant, and is to be exercised only in the manner prescribed by law. * * * It is a sovereign power, to be used only by the sovereign, or by one on whom the sovereign has conferred it for a particular use; and when conferred it is to be treated as an invasion of the rights of the individual whose property is to be taken, and therefore to be strictly construed".

In State ex rel. Cranfill v. Smith, 330 Mo. 252, 257, 48 S.W.2d 891, 893, 81 A.L.R. 1066, it was said: "Condemnation proceedings, by which private property is taken for public use, operate *in invitum,* in derogation of common right, and, for that reason, the rule of *strictissimi juris* is applied to such proceedings. (Citations.) 'The exercise of the power (of eminent domain) being against common right, it cannot be implied or inferred from vague or doubtful language, but must be given in express terms or by necessary implication. When the right to exercise the power can only be made out of argument and inference, it does not exist.' (1 Lewis on Eminent Domain, sec. 371)".

■ "The power to condemn private property for a public purpose is in derogation of the common law and, hence, both the statute conferring the power and the proceedings under the statute are to be strictly construed in favor of the property owner." City of Caruthersville v. Faris, 237 Mo.App. 605, 615, 146 S.W.2d 80, 86. See, also, Houck v. Little River Drainage District, 343 Mo. 28, 37, 119 S.W.2d 826.

In an early decision in Schmidt v. Densmore, 42 Mo. 225, the Supreme Court said at page 234: "The Legislature, it is admitted, has the power to authorize the taking of private property for public use, by virtue of the right of eminent domain, upon just compensation being made therefor. But the power at best is in derogation of property and the right of the citizen, and is not to be extended beyond the plain provisions of the law. If it is intended to take or convert property without the consent of the owner, the authority must not be implied or inferred. It must be given in express terms, and written in plain English".

■■ As will be noted the statute relied on by the plaintiff authorizes the taking of the water from "any stream that is not navigable", to erect a dam thereon and to lay pipes for transportation of such water over the lands from the point of source to the point of delivery, and to acquire by condemnation such lands on which to build its

works for the pumping, storage, distribution and management of the water. Only one of the above powers is here in question, namely, the source from which the statute authorizes water to be appropriated by condemnation. It is said in 65 C.J.S. Navigable Waters, § 5, page 49: " * * * a stream or other body of water is navigable in law when it is navigable in fact, and conversely, if it is not navigable in fact, it is not navigable in law. In this respect, a stream or other body of water is navigable in fact where, and only where, it is of sufficient capacity to be capable of being used for useful purposes of navigation, that is, for trade and travel in the usual and ordinary modes". Thus, in the usual sense, and certainly in the sense used in the statute under consideration, the designation or classification of a stream as "navigable" or as "not navigable" must be, in both cases, considered to have reference to surface streams, to which can be put the test of their use "for * * * purposes of navigation", that is, for "trade and travel in the usual and ordinary modes". The words in the statute here involved "from any stream that is not navigable" refer to surface streams not adaptable for means of trade or travel in the usual and ordinary modes. Under the rule of strict construction which here applies, we cannot hold that the Legislature considered or intended to classify underground streams of water as streams "not navigable" referred to in Section 393.030.

In fact, the plaintiff apparently does not contend that to take water by means of wells from beneath the lands of private owners and from underground streams is taking water "from any stream that is not navigable" within the meaning of the above statute. What it does argue is that in view of the abundant sources of water in this state other than nonnavigable streams, it would have been foolish for the Legislature to limit the appropriation of water to such streams, the effect of which would destroy scenery, deprive farmers of water for stock, and fishermen the opportunity for sport. At the same time plaintiff cites authorities governing rights to percolating waters as compared to currents beneath the surface following established and well-defined channels. The Springfield Waterworks Company v. Jenkins, 62 Mo.App. 74, 56 Am.Jur. page 593. Those authorities hold that percolating waters are the sole property of the owner of the land and a part of the land, whereas an underground flow or current in a well-defined channel cannot be diverted or obstructed by the landowner. These distinctions are not material in proceedings to exercise eminent domain, unless, as we have pointed out, it can be said that the Legislature has granted the authority to condemn such waters. The plaintiff contends that the Legislature intended by Section 393.030 primarily to address itself to the sole problem of taking water, with no intention of limiting the power to take land. It further asserts that under the construction urged by the defendants, the statute would, in effect, limit public water suppliers to nonnavigabe streams, not intended by the Legislature.

The defendants urge the rule that the Legislature is the sole source of the authority to condemn; that the rule of strict construction of the statute authorizing condemnation, as above reviewed, must be applied, and maintain that said Section 393.030 and the sections following it confine the authority to condemn private property to operations where the water is obtained from "any stream that is not navigable" and none other. They argue that it is obvious from the petition that the real object of the plaintiff is to appropriate the private lands of the defendants, without their consent, as a site for wells from which to draw its water supply from underground for public use, whereas, the statute *nowhere* authorizes a water company to appropriate private lands for the purpose of obtaining a source of water underground. They point out that Section 393.050, wherein provisions for the appointment of appraisers under such proceedings make reference to " * * * the real estate *or stream of water* or a part thereof is situated", and which require the commissioners or jury to report as to the value of the use "of any *such stream,* or the diversion of the waters

thereof", and the damage that will be done by the "use of *such stream* in any manner for the purposes aforesaid" (italics supplied), is evidence of the intent of the Legislature to limit absolutely the power conferred to water obtained from nonnavigable streams and from no other source.

We do not agree that Section 393.030 is rendered meaningless or futile when construed to confer no authority to condemn land for the purpose of taking water from underneath its surface for public use. While it cannot be implied from its provisions that private property may be appropriated as a site for subterranean exploration and removal of water beneath the surface for public use, such construction does not "emasculate the statute beyond all practical purposes", but, on the contrary, it confers substantial power and benefits. That section not only permits a water corporation to appropriate water by condemnation from any stream in the state that is not navigable, but it plainly authorizes the condemnation of the necessary land upon which to erect dams and other necessary facilities named for the purpose of furnishing a water supply from such source to cities, towns and villages. Neither does that section "limit water suppliers to nonnavigable streams". Nor does that section, or any other law, prevent such water companies from selling to cities, towns and villages water from any private source legally acquired. Under Section 393.010, such corporation is given the power to lay its facilities through the streets and alleys of a city, town or village with the consent of such municipality for means of transporting water obtained from any source lawfully acquired, and under Section 393.020, underground water mains may be laid along public highways of the state and necessary lands may be condemned to transport water from any legal source. What Section 393.030 does do is to limit such water companies to nonnavigable streams when exercising the power of *eminent domain* to acquire a *source* of water supply.

It is true that Section 393.030 specifically authorizes such companies to condemn water in "any stream that is not navigable", a valuable privilege to supplement sources acquired by lease, purchase, or other contractual methods, but the Legislature did not extend such power of appropriation to sources underground on private lands. To do so it needed only to have so declared in plain terms.

When a statute is enacted under full authority and is unambiguous, it is the duty of the courts to take it as they find it. No power is given to the courts to add to or take from the plain words of a statute because of consideration for policy, convenience or public welfare. "It is the duty of the courts to apply the law as written by the Legislature, and where the legislative language is clear and unambigous the courts have no authority to do other than to obey the legislative command. This proposition is so obvious and well settled that no authorities need be cited to support it". Camden v. St. Louis Public Service Company, 239 Mo.App. 1199, 206 S.W.2d 699, 702. If Section 393.030 ought to be so amended as to extend the power of eminent domain further than its present terms permit, that is a matter which should be addressed to the Legislature for its consideration.

We conclude that the Legislature of this state is the sole source of authority for the exercise of any right of eminent domain; that its enactments conferring such powers require strict construction in favor of the owner of land sought to be so taken; that Section 393.030 RSMo 1949, V.A.M.S., so construed, does not specifically or impliedly authorize the condemnation of private lands "for the purpose of taking water from the earth beneath the lands from underground streams"; that, therefore, the plaintiff's first amended petition states no claim for which relief can be granted for the reason assigned by the trial court and should be and was properly dismissed. It is not necessary to discuss the other grounds assigned by defendants for dismissal. Judgment affirmed.

All concur.