Fannie ZASSLOW (Plaintiff), Appellant,

v.

SERVICE BLUE PRINT COMPANY and American Automobile Insurance Company, Corporations (Defendants), Respondents.

No. 29504.

St. Louis Court of Appeals.

Missouri.

March 20, 1956.

378

Gragg &, Aubuchon, William R. Schneider, St. Louis, for appellant.

Moser, Marsalek, Carpenter, Cleary & Carter, John S. Marsalek, St. Louis, for respondents.

HOUSER, Commissioner.

This is an appeal by Fannie Zasslow, widow and dependent of deceased employee Albert Zasslow, from a judgment of the Circuit Court of the City of St. Louis affirming a final award of the industrial commission subjecting an award in her favor in a workmen's compensation case to a subrogation credit of $6,000.

On June 19, 1952 Albert Zasslow, an employee of Service Blue Print Company, was killed by the negligence of a third party, Haley Cate Company, in an accident arising out of and in the scope and course of his employment. His widow Fannie employed her own attorneys and on August 13, 1952 filed a common law death action against the negligent third party. At no time did the employer and insurer seek to intervene in or interfere with the conduct of this action, which resulted in a judgment for $12,500. Following a voluntary remittitur of $3,500 pursuant to a settlement agreement final judgment for $9,000 was rendered. This amount was paid to Fannie and the judgment was satisfied. Of this sum $3,000 was paid to Fannie's lawyers for their services. No payment of any kind under the Workmen's Compensation Act has been made to Fannie by the employer or insurer. On April 1, 1953 Fannie filed a claim against Albert's employer and insurer under the Workmen's Compensation Act, Section 287.010 et seq. RSMo 1949, V.A.M.S., for $9,553, basing her claim upon an average weekly wage of $45.77. Respondents filed an answer alleging that Albert's average weekly wage was $30.18; that in computing Albert's average weekly wages a $60 per month pension received by Albert from a previous employment could not be counted, and that the claim was extinguished by the subrogation credit of $6,000 to which respondents made claim. Following a hearing a referee of the industrial commission awarded Fannie death benefits of $20.12 per week (2/3 of $30.18) for 300 weeks, or $6,036, plus a funeral bill in the sum of $400 and a doctor bill in the sum of $47. The aggregate award was for $6,483, less a subrogation credit of $6,000. On review the full commission affirmed the award with certain exceptions not material here, and on appeal the circuit court affirmed the final award of the commission.

Not denying that respondents are entitled to a subrogation credit arising out of the settlement of the third party action, appellant's chief insistence is that the referee, commission and court should have given respondents a credit of only $4,322; should have awarded appellant $1,678 of the third party recovery, and should not have allowed respondents a subrogation credit of $6,000. The gist of her complaint is that the method of computation adopted below compels her to assume the entire burden and pay the entire cost of recovering the judgment of $9,000 against the negligent third party, whereas in equity and good conscience and under the common law of trusteeship she should be required to pay only her proportionate share of that expense. She asserts that she recovered $6,483 as trustee for respondents; that on her own claim against the third party she recovered a net amount of $1,678 for herself, figured as follows: ($9,000 less $6,483 equals $2,517 less 1/3 or $839—her proportionate share of the attorneys' fee), and that the amount of the subrogation credit should not have been $6,000 but should have been $6,000 less $1,678 or $4,322. In short, the principal question in this case is whether an employer who is liable to pay compensation to the dependent of a fatally injured employee is entitled to a subrogation credit out of the proceeds of a third party action by the employee's dependent, without proportionately sharing the cost of attorneys' fees.

Under the law as it was written at the time the facts in the instant case arose the referee, commission and court properly held that the employer was so entitled. The governing statute then applicable was Section 287.150 RSMo 1949, V.A.M.S. which, after giving the right to subrogation to the employer, provided that any recovery by the employer against a third person, in excess of the compensation paid by the employer, *after deducting the expenses of making such recovery,* should be paid forthwith to the employee or to the dependents. The Act, as then written, treated the recovery as a fund charged first with the payment of the expenses of making the recovery and then with the compensation paid by the employer, and the employee was entitled only to whatever excess remained. Appellant

objects that the section referred exclusively to cases in which the employer had paid compensation and recovered from the third party, but the courts have long recognized that either the employer or the employee, or the two jointly, may institute and maintain the third· party action; that whoever recovers holds the recovery as an express trustee for the other, "the employee to see that the employer's right of subrogation is protected, and the employer to see. that the employee receives any surplus after his indemnification." Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913, loc. cit. 919. Under § 287.150, supra, it was a matter of indifference whether the recovery was obtained against the third party by the employer or by the employee, and no reason is apparent why a different method of distribution should be adopted in the one case from that directed in the other. The expenses of making the recovery were a first charge on the fund by the terms of § 287.150, supra, which fixed the equities of the situation. The employer was entitled to receive credit for the full amount of appellant's net recovery of $6,000, without deduction of respondents' proportionate share of appellant's attorneys' fees. See the cases of Fontana v. Pennsylvania R. Co., D.C.S.D. N.Y., 106 F.Supp. 461, affirmed 2 Cir., 205 F.2d 151, certiorari denied 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390; Ocean S. S. Co. of Savannah v. Lumbermens Mut. Casualty Co. of Illinois, 2 Cir., 125 F.2d 925, and Fireman's Fund Indemnity Co. v. Batts, 11 N.J.Super. 242, 78 A.2d 293, in which the statutes construed were sufficiently similar to § 287.150, supra, to make them persuasive authority. And see Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Barco, 1954, 175 Pa. Super. 369, 103 A.2d 452, and Manion v. Chicago, R. I. & P. R. Co., 2 Ill.App.2d 191, 119 N.E.2d 498. The distribution was properly held to be governed by § 287.150, supra, which was the only section of the Act evidencing the legislative intent relating to the distribution of third party recoveries in effect at the time the facts in the instant case occurred.

Appellant, however, forcefully argues that equity demands that the expense of the recovery be borne proportionately. She would have us construe the words "after deducting the expenses of making such recovery" as though they read "after deducting the proportionate share of the expenses of making such recovery." Such a judicial encroachment on the powers of the General Assembly would be wholly unwarranted. A court has no power to add to or take from the plain words of an unambiguous statute but must apply the law as it is written by. the General Assembly. Steggall v. Morris, 363 Mo. 1224, 258 S.W. 2d 577; State ex rel. Missouri Water Co. v. Bostian, Mo.App., 272 S.W.2d 857. In this connection see Caputo v. Best Foods, 30 N.J.Super. 552, 105 A.2d 445, loc. cit. 449.

The Sixty-eighth General Assembly repealed § 287.150, supra, and in lieu thereof enacted a new § 287.150 consisting of two paragraphs, the first of which is a reenactment of § 287.150, supra, verbatim and· the second of which provides that whenever recovery against a third person is effected by the employee or his dependents "the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee", as now sought ·to be enforced by appellant. Laws 1955, p. ——, H.B. No. 335, § 1.· This provision, however, was not in effect when the instant facts occurred. It did not become effective until 90 days after May 31, 1955. This court cannot give it retroactive effect.

We have examined the cases from foreign jurisdictions cited in appellant's brief. Because of the differences in the wording of the statutes the cases of Voris v. Gulf-Tide Stevedores, 5 Cir., 211 F.2d 549; R. E. Spriggs v. Industrial Accident Commission, 42 Cal.2d 785, 269 P.2d 876; Arex Indemn. Co. v. Radin, Fla., 72 So.2d 393, and Caputo v. Best Foods, supra, are not persuasive. It is noted, however, that the result in Voris v. Gulf-Tide Stevedores,

supra, is the same as that reached by the industrial commission herein. Privetera v. Hillcrest Homes, 29 N.J.Super. 591, 103 A.2d 55, does not support appellant's position. In that case the court held that the compensation insurance carrier was entitled to full reimbursement for its compensation outlays without any deduction whatever on account of attorneys' fees and expenses. Conrad v. Aero-Mayflower Transit Co., 152 Pa.Super. 477, 33 A.2d 91, may no longer be considered as the law in Pennsylvania in view of the amendment effective July 1, 1945 of § 319 of the Act of June 2, 1915, 77 P.S. § 671, under which amendment it has been held that an employer and insurance carrier are entitled to receive out of a third party settlement the amount of compensation paid, without reduction by proportionate share of counsel fees for services rendered in obtaining the settlement. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Barco, supra.

■ Appellant counts heavily on the equitable rule that a trustee can properly incur expenses, including attorneys' fees, which are necessary in the performance of his duties as a trustee and that he is entitled to indemnity therefor out of the trust estate. It is not necessary for us to decide whether the industrial commission has jurisdiction to invoke and administer equitable principles, and we do not express any opinion upon the question. In any event, there was no occasion for the commission to resort to the equitable rule suggested because § 287.150, supra, prescribed in clear and unambiguous terms the method of computing the subrogation credit.

Appellant's second point relates to the basis for computing the death benefit. Appellant contends that the annual earnings base should include not only the annual earnings while in the employ of the blue print company but also the total amount received during the year from a former employer in the form of a pension or retirement benefit. Albert Zasslow, formerly employed as a conductor by St. Louis

Public Service Company, was disqualified for further employment with that concern. Following termination of that employment he received $60 per month as a pension or retirement benefit from the public service company. Six months after the termination of his employment at the public service company he secured employment with the blue print company as a messenger. The latter company employed several pensioners. Other employees were working there under the Government Training Program, the government paying part and the employer paying part of their pay. Pensioners and non-pensioners in the same job classification received the same pay. The pay Albert received as a messenger was not affected by the fact that he was receiving a pension. The vice-president of the blue print company knew from talking to the employees that three or four of them, including Albert, were public service company pensioners but he was not shown any contract under which the pensions may have been paid. It was not shown whether the public service company pension plan was contributory from the wages of employees or non-contributory, or whether the public service company was legally obligated to pay the pension. Albert performed no services for the public service company during the period he received the pension. He worked exclusively for the blue print company for some five years prior to his death.

■ Section 287.250 RSMo 1949, V.A. M.S. provides in paragraph (1) that compensation shall be computed on the basis of the annual earnings received "as salary, wages, or earnings", and in paragraph (7) that "the value of gratuities customarily received by consent of the employer, in the usual course of business from persons other than the employer" shall be included in computing the annual earnings. Section 287.270 RSMo 1949, V.A.M.S. provides that "No savings or insurance of the injured employee, nor any benefits derived from any other source than the employer or the employer's insurer for liability under this chapter, shall be considered in determining the compensation due here-

under." A reading of the Workmen's Compensation Act as a whole, with particular consideration of §§ 287.250 and 287.-270, supra, makes it plain that the General Assembly intended compensation to be computed upon the basis of the salary, wages or earnings received by the employee while engaged in the performance of the duties of and in the usual course of the *employer's* business, and that any sums received by an employee on account of a previous employment by another and different employer are not to be included in the computation. Under the sections cited pensions received by employees from former employers are not "gratuities" or "earnings." Such income is a benefit derived from a source other than the employer and as such is specifically excluded by § 287.270, supra. The words "gratuities * * * received * * * in the usual course of business * * *" as used in paragraph (7), supra, refer to additional income of the employee over and above his regular salary, wages or earnings received in the form of gratuities, such as tips, while engaged in the performance of the duties of his employment by the employer against whom the compensation claim is made and in the usual course of the latter's business. Appellant relies upon Dixon v. Postlewait Glass Co., Mo.App., 238 S.W.2d 93, in which the Kansas City Court of Appeals held that benefits received from the federal government by a veteran for on-the-job training under the G. I. Bill of Rights are gratuities and therefore earnings within the Workmen's Compensation Act. That situation is entirely different from the instant case. Those payments by the federal government were received by the employee as an integral part of the performance of the duties of and in the usual course of his employer's business. The employer made a formal application to the Veterans Administration for approval of the training program, the employee's rate of pay was agreed upon in an amount which would allow collection of the full government subsistence allowance, and the payments by the government were made to supplement apprentice wages being paid by the employer in consideration of the employment of the veteran by the employer. The benefits were derived from the employment in a very real sense. Absent the employment the benefits would not have been paid. Not so in the instant case. The pension had its origin wholly independent of the employment with the blue print company, and its receipt had no effect whatever upon the employee's rate of pay. The pension did not have its source in, was not received in the course of, and was not dependent upon the employment. The pension was not related to or connected with the earnings of the employee received in the employ of the blue print company.

Appellant cites statutes and decisions ruling that where an employee is working concurrently for several different employers at the time of his injury his total wages from all of them are to be considered as the basis for computing his compensation. See Section 287.130 RSMo 1949, V.A.M.S. and Grote v. Monward Realty Co., 232 Mo.App. 189, 96 S.W.2d 660. These rulings have no bearing on the instant case because this employee was employed exclusively by the blue print company and was not receiving earnings from any other employer at the time of his injury.

The subrogation credit and the annual earnings were both properly computed. The judgment of the circuit court affirming the action of the industrial commission should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., and N. T. CAVE and GEORGE P. ADAMS, Special Judges, concur.